UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE A. DONAHOO, | Case No. CV 08-8098 JC |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| v. | |
| | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

I.    **SUMMARY**

On December 10, 2008,  plaintiff Marie A. Donahoo, also known as Marie
A. Schneider ("plaintiff") filed a Complaint seeking review of the Commissioner
of Social Security's denial of plaintiff's applications for benefits.  The parties have
filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; December 17, 2008 Case Management Order ¶ 5.
///

1

1   Based on the record as a whole and the applicable law, the decision of the
2   Commissioner is AFFIRMED.  The findings of the Administrative Law Judge
3   ("ALJ") regarding plaintiff's credibility are supported by substantial evidence and
4   are free from material error.[1]

5   **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
6           **DECISION**

7   On December 7, 2006, plaintiff filed applications for Supplemental Security
8   Income and Disability Insurance Benefits.  (Administrative Record ("AR") 40, 80-
9   94).  Plaintiff asserted that she became disabled on August 19, 2001 due to
10  "Rhumatoid [sic] arthritis in right wrist and both knees."  (AR 80, 109).  The
11  Social Security Administration denied plaintiff's application initially and on
12  reconsideration.  (AR 51-52, 56-57, 60-72).  Plaintiff requested a hearing, which
13  an ALJ conducted on April 10, 2008.  (AR 36-50, 73).   The ALJ examined the
14  medical record and heard testimony from plaintiff (who was represented by
15  counsel) and a vocational expert.  (AR 36-50).

16  On April 25, 2008, the ALJ determined that plaintiff was not disabled
17  through the date of the decision.  (AR 8-15).  Specifically, the ALJ found:
18  (1) plaintiff suffered from the following severe impairments:  "osteoarthritis in the
19  bilateral knees and right wrist osteoarthritis status post surgery"  (AR 10);
20  (2) plaintiff's impairments, considered singly or in combination, did not meet or
21  medically equal one of the listed impairments (AR 10); (3) plaintiff retained the
22  residual functional capacity to perform a limited range of light work[2]  (AR 11);[3]

23  _____

24      [1]The harmless error rule applies to the review of administrative decisions regarding
25  disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
    (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
26  Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
27  application of harmless error standard in social security cases).

28      [2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or
    carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a
                                                                                    (continued...)

2

1  (4) plaintiff could not perform her past relevant work (AR 14); (5) plaintiff could

2  perform a range of other work that exists in significant numbers in the national

3  economy (AR 14-15); and (6) plaintiff's allegations regarding her limitations were

4  not totally credible  (AR 11-13).

5       The Appeals Council denied plaintiff's application for review.  (AR 1-3).

6  **III.   APPLICABLE LEGAL STANDARDS**

7       **A.   Sequential Evaluation Process**

8       To qualify for disability benefits, a claimant must show that she is unable to

9  engage in any substantial gainful activity by reason of a medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of at least twelve

12  months.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

13  § 423(d)(1)(A)).  The impairment must render the claimant incapable of

14  performing the work she previously performed and incapable of performing any

15  other substantial gainful employment that exists in the national economy.  <u>Tackett</u>

16  <u>v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

17  ///

18

19

20       [2](...continued)

job is in this category when it requires a good deal of walking or standing, or when it involves

21  sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§

404.1567(b), 416.967(c).

22

23       [3]The ALJ determined that plaintiff could:

24       lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6
hours in an 8-hour workday, sit 6 hours in an 8-hour workday, . . . no hand

25       controls with the right hand, occasional push/pull with the upper extremities, no
ladder/rope/scaffold climbing, frequent ramp/stair climbing, balancing, stooping,

26       kneeling, crouching and crawling, occasional handling with the right upper
extremity, and avoid all exposure to hazardous machinery and unprotected

27       heights.

28

(AR 11).

3

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)     Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to perform her past relevant work?[4]  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

///

---

[4]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

4

1     **B.     Standard of Review**

2         Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

3    benefits only if it is not supported by substantial evidence or if it is based on legal

4    error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

5    2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

6    (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

7    mind might accept as adequate to support a conclusion."  Richardson v. Perales,

8    402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

9    mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

10   Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

11        To determine whether substantial evidence supports a finding, a court must

12   "'consider the record as a whole, weighing both evidence that supports and

13   evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

14   Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

15   953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

16   or reversing the ALJ's conclusion, a court may not substitute its judgment for that

17   of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

18   **IV.    DISCUSSION**

19        Plaintiff claims that she cannot stand or walk six hours out of an eight hour

20   day, as the ALJ found, given her degenerative bilateral knee osteoarthritis.

21   (Plaintiff's Motion at 9).  Plaintiff provided no evidence to the Administration

22   suggesting such a limitation, beyond a single self report (AR 156 (plaintiff

23   checking that she can stand/walk less than two hours per day)).  She asserts that

24   she would have been found disabled had the ALJ credited plaintiff's subjective

25   complaints, including her alleged sit/stand limitation and contends that the ALJ

26   failed to give legally sufficient reasons for rejecting plaintiff's subjective

27   complaints.  (Plaintiff's Motion at 8-11).   For the reasons discussed below, this

28   Court disagrees.

1      **A.    Background**

2            **1.    The Medical Record**

3      Plaintiff received medical care from Kaiser Permanente.  A March 24, 2006

4 Progress Note from Dr. Quincy Wang reflects that plaintiff hurt her right wrist and

5 left knee in January 2006, after slipping and falling while walking her dog.  (AR

6 184).  Plaintiff reported that her left knee was feeling better.  (AR 184).  Her knee

7 was less swollen and presented no problems in walking.  (AR 184).  Her right

8 wrist was the most problematic, having been a problem for many years before the

9 fall aggravated it.  (AR 184).  Dr. Wang indicated that plaintiff's x-ray showed

10 extensive "DJD" (degenerative joint disease) to the radiocarpal joint.  (AR 184).[5]

11 Dr. Wang noted tenderness, swelling, and a reduced range of motion in plaintiff's

12 wrist.  (AR 184).  Dr. Wang noted that plaintiff's left knee presented a normal

13 exam with no swelling, tenderness or instability, and only mild patellar crepitus

14 with knee motion.  (AR 184).[6]  Dr. Wang assessed plaintiff with osteoarthritis of

15 the wrist and contusion of the knee.  (AR 184).

16      Plaintiff returned to Kaiser with complaints of wrist pain on June 22, 2006.

17 (AR 234).  Plaintiff reported that she suffered a wrist fracture 20 years earlier.

18 (AR 234).  The plan was to fuse plaintiff's right wrist.  (AR 234).  Plaintiff

19 underwent a second examination of her right wrist on August 31, 2006.  (AR 241-

20 42).

21      Plaintiff, who is right handed, underwent a right wrist fusion on September

22 20, 2006, to address her osteoarthritis.  (AR 168-71, 175).  Plaintiff's goal was to

---

25      [5]A February 16, 2006 x-ray of plaintiff's wrist showed that plaintiff had "severe
26 degenerative osteoarthritic changes especially affecting the radiocarpal joint with marked
narrowing of the joint space, as well as prominent osteophyte."  (AR 188).  The navicular bone
27 and lunate were "moderately deformed raising the possibility of a[n]. . . old fracture."  (AR 188).

28      [6]Plaintiff's February 16, 2006 x-ray of her left knee showed a "moderate to severe degree
of osteoarthritis" with "[a]symmetric joint space narrowing in the medial compartment of the
tibiofemoral joint space and osteophyte formation."  (AR 189).

return to bike riding. (AR 175). An examination after her surgery revealed some finger stiffness, but noted that she was doing well. (AR 175). Plaintiff's reported pain levels were 0/10 at rest, and 4/10 with activity. (AR 178, 246). An x-ray of plaintiff's right wrist on October 2, 2006, revealed soft tissue swelling. (AR 186, 244). Plaintiff had no complaints other than post-operative discomfort. (AR 243, 245).

A treatment note from October 2, 2007, reflects that plaintiff was complaining that the pain medication she was given for her back was not helping. (AR 274). Plaintiff was prescribed a new muscle relaxer. (AR 274). An October 22, 2007 note reflects that plaintiff requested a visit with her primary care physician for medication for depression. (AR 279-80; see also AR 288-89 (follow up re same)).

A treatment note from October 29, 2007, listed as plaintiff's "problems": osteoarthritis in both knees, "smoker," "alcohol abuse," hyperthyroidism, and thryroiditis. (AR 216; see also AR 258 (noting alcohol abuse)). Plaintiff then reported suffering from pain in her knees at a level of 10/10 for the past two years. (AR 220, 223; see also AR 258 (treatment note from September 25, 2007 reporting back and knee pain)). Plaintiff was using a cane. (AR 220). Dr. Frisancho assessed that plaintiff was suffering from osteoarthritis of the knee, and noted that findings warranted knee replacement surgery for plaintiff's right knee. (AR 221).[7] Plaintiff was scheduled for her knee replacement on November 3, 2007. (AR ///

---

[7]X-rays of plaintiff's right knee on September 25, 2007, revealed no fractures but degenerative change with "mild medial and lateral femorotibial joint space narrowing" and "moderate osteophyte formation" in the "tricompartmental regions" and degenerative change in the "proximal tibia/fibula joint space." (AR 264-65). Dr. Frisancho's notes from the October 2007 examination, however, indicate that plaintiff's knees had moderate joint tenderness and moderate patella compression tenderness on examination, and that prior x-rays showed "severe" medial joint space narrowing and/or degenerative changes, "moderate" lateral and patellafemoral joint space narrowing and/or degenerative changes, and "moderate" osteophyte subluxation. (AR 222).

1   221).  Plaintiff cancelled her surgery because she was unable to get a dental
2   clearance.  (AR 267).

3        The record contains no medical source statements concerning plaintiff's
4   limitations other than reports from two state agency physicians who reviewed
5   plaintiff's medical record as of February 20, 2007 and April 23, 2007, and opined
6   that plaintiff was capable of performing light work with the limitations the ALJ
7   ultimately adopted.  (AR 190-95, 203).[8]

8                **2.    The Record of Plaintiff's Subjective Complaints**

9        Plaintiff testified to the following at the administrative hearing:   She had
10  not worked since her fall in January 2006.  (AR 39-40).  She did not work due to
11  pain.  (AR 45).  She had difficulty sleeping at night and had been prescribed
12  Ambien.  (AR 42).  She took Vicodin, which made her nap about three days per
13  week for an hour and a half each time.  (AR 42-43).  She could lift 10 pounds,
14  possibly 20.  (AR 43).  She did not have a car and did not drive.  However, she her
15  dog and would walk with groceries from the grocery store about four or five
16  blocks twice per week. (AR 43).  She would have to rest two days with her legs
17  elevated after walking four or five blocks.  (AR 43-44).  She had difficulty
18  grasping things with her hands and would drop things.  (AR 45).  She read a lot
19  and could read from an hour or three or four hours, just by changing her position
20  or walking her dog, depending on how good her book was, how much Aleve she
21  had taken, and how long she had rested.  (AR 46).[9]  She needed to have both knees

22

23        ────────────────────
24        [8]Plaintiff does not challenge the state agency physician opinions beyond noting that the
    opinions "give rise to the need to articulate reasons for rejecting the testimony of [plaintiff]."
25  (Plaintiff's Motion at 8).

26        [9]Plaintiff's written reports are similar to her testimony.  In a daily activities questionnaire
    dated December 28, 2006, plaintiff reported:   She had just had her surgery in her right wrist and
27  could no longer bend her wrist.  (AR 105).  Both of her knees were "bad – specially (sic) [her]
    left."  (AR 105).  Her fingers were becoming deformed.  (AR 105).  She limped almost always,
28  and on bad days used a cane her son bought for her.  (AR 105).  She walked to the store about six
                                                                              (continued...)

                                          8

1  replaced, but had not had the surgeries because she needed to have her tooth fixed.

2  (AR 44).  She was in dull pain every day.  (AR 44).  To address the pain, plaintiff

3  would not move her knees or hands, depending on which part hurt, and would take

4  Aleve.  (AR 45).

5  **B.  The ALJ Properly Assessed Plaintiff's Credibility**

6        **1.  Pertinent Law**

7        When an ALJ determines a claimant's residual functional capacity, careful

8  consideration should be given to any evidence about symptoms because subjective

9  descriptions may indicate more severe limitations or restrictions than can be

10  shown by medical evidence alone.  Robbins, 466 F.3d at 883  (citations omitted).

11  However, an ALJ is not required to believe every allegation of disabling pain or

12  other non-exertional impairment.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir.

13  2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

14  ───────────────

15      [9](...continued)

16  or seven blocks away, and when she did, the next day she "pa[id] for it."  (AR 105).  She could
climb stairs, and lift laundry and light grocery bags.  (AR 106).  As she is a mom, she did what

17  she had to do to take care of her family, including cleaning her home, vacuuming, and doing

18  dishes.  (AR 106-07).  Her condition was getting worse.  (AR 107).

19      In a function report dated April 26, 2007, plaintiff reported:  Her knees were "shot," and
her back was then having problems.  (AR 132; see also AR 145 (noting same)).  She walked her

20  small dog around the block in the mornings, cleaned her studio, ran her vacuum, did laundry,

21  read, watched TV, walked five blocks to the grocery store, cooked dinner, did homework with
her son, and tended to a few plants.  (AR 132).  It was hard for her to work belts and buttons with

22  her hands.  She had problems with her arthritis in the morning and at night.  She took Aleve and

23  Excedrin PM every day.  (AR 133).  She had problems lifting, squatting, bending, standing,
walking, kneeling, stair-climbing, and using her hands.  (AR 137).  She could walk five blocks

24  before needing to rest for five to 10 minutes. (AR 137).  Her "brain work[ed] fine."  She had no

25  difficulty paying attention, finishing what she started, following written and spoken instructions,
or getting along with authority figures.  (AR 137-38).  She could handle stress "better than most

26  of [her] friends."  (AR 138).

27      In a later disability report, plaintiff reported:   She could not move her right wrist "except

28  sideways," and had more pain and less movement in her knees and carpel tunnel in her left wrist.
(AR 118-19).  She was depressed.  (AR 119).  She could care for her personal needs by doing
"limited stuff, dress, cook and basic needs for her son (14) and [herself]."  (AR 121).

1    If the record establishes the existence of a medically determinable

2  impairment that could reasonably give rise to the reported symptoms assertedly

3  suffered by a claimant, an ALJ must make a finding as to the credibility of the

4  claimant's statements about the symptoms and their functional effect.  Robbins,

5  466 F.3d at 883 (citations omitted).  Unless an ALJ makes a finding of

6  malingering based on affirmative evidence thereof, the ALJ may reject a

7  claimant's testimony regarding the severity of her symptoms only if the ALJ

8  makes specific findings stating clear and convincing reasons for doing so.  Id.

9  (citations omitted); see also Carmickle v. Commissioner, Social Security

10  Administration, 533 F.3d 1155, 1160 (9th Cir. 2008).

11    To find the claimant not credible, an ALJ must rely either on reasons

12  unrelated to the subjective testimony (e.g., reputation for dishonesty), internal

13  contradictions in that testimony, or conflicts between the claimant's testimony and

14  the claimant's conduct  (e.g., engaging in daily activities inconsistent with the

15  alleged symptoms, maintaining work inconsistent with the alleged symptoms,

16  failing, without adequate explanation, to take medication, to seek treatment or to

17  follow prescribed course of treatment).  Lingenfelter v. Astrue, 504 F.3d 1028,

18  1035-40 (9th Cir. 2007); Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch,

19  400 F.3d at 680-81; SSR 96-7p.[10]   The ALJ's credibility findings "must be

20  sufficiently specific to allow a reviewing court to conclude the ALJ rejected the

21  claimant's testimony on permissible grounds and did not arbitrarily discredit the

22  claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see

23  also Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (an ALJ must

24

25    [10]The Burch court explained:

26

27    [I]f a claimant engages in numerous daily activities involving skills that could be
    transferred to the workplace, the ALJ may discredit the claimant's allegations
    upon making specific findings relating to those activities.

28

400 F.3d at 681 (citation omitted).

10

1  "specifically identify the testimony [the ALJ] finds not to be credible and must
2  explain what evidence undermines the testimony").

3      Questions of credibility and resolutions of conflicts in the testimony are
4  functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th
5  Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable
6  and is supported by substantial evidence, it is not the court's role to "second-
7  guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

8          **2.   Analysis**

9      As plaintiff acknowledges, the ALJ summarized plaintiff's testimony as
10 well as the medical record before setting forth his specific reasons for disbelieving
11 the extent of plaintiff's subjective complaints.  (Plaintiff's Motion at 8-10; see also
12 AR 11-13 (ALJ's discussion).   The ALJ found that plaintiff's subjective
13 complaints and alleged limitations were "out of proportion" to the objective
14 findings, and were incredible to the extent plaintiff's complaints were inconsistent
15 with the limited light residual functional capacity assessed by the ALJ.  (AR 13).
16 Specifically, the ALJ reasoned:  (1) the medical record did not support plaintiff's
17 alleged limitations in that:  (a) there was no evidence of muscle atrophy
18 compatible with plaintiff's alleged inactivity and inability to function (AR 13);
19 (b) there was no evidence that plaintiff's right knee osteoarthritis could be
20 expected to result in more than minimal limitations for over a 12 month period
21 with continued treatment/surgery (AR 13); and (c) there was no evidence of motor
22 weakness of the right upper extremity to support claimant's allegation that she
23 drops things with her hand (AR 12); (2) plaintiff's subjective complaints and
24 alleged limitations were not consistent with her treatment history as (a) there was
25 no evidence of treatment for plaintiff's right wrist after October 2006; and (b)
26 there was no evidence of treatment for the left knee after March 2006, i.e., if
27 plaintiff had disabling problems, she would have received more aggressive
28 ///

11

1   treatment (AR 13);[11] and (3) plaintiff's activities of daily living were inconsistent

2   with her complaints, given that plaintiff shopped, ran her home, read sometimes

3   for 3-4 hours at a time, walked her dog around the block, walked to the bus stop

4   and walked to the local store.  (AR 13).  These reasons are sufficient.

5       First, as noted above, in assessing credibility, the ALJ may properly rely on

6   inconsistencies between plaintiff's statements and her conduct.  See Thomas v.

7   Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the

8   claimant's testimony and the claimant's conduct supported rejection of the

9   claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)

10  (inconsistencies between claimant's testimony and actions cited as clear and

11  convincing reason for rejecting claimant's testimony).  Here, the ALJ found

12  plaintiff's pain complaints were "unsupported and unrealistic" given that plaintiff

13  engaged in significant activities of daily living, including running her home,

14  walking her dog and walking to the bus stop and grocery store.  The ALJ could

15  rely on plaintiff's daily activities as an adequate reason to find plaintiff's

16  subjective complaints not entirely credible.[12]  See Burch, 400 F.3d 676, 680 (9th

17  Cir. 2005) (upholding adverse credibility determination where claimant's daily

18  activities "suggest that she is quite functional," where the claimant was "able to

19  care for her own personal needs, cook, clean and shop"; noting "[a]lthough the

20  evidence of Burch's daily activities may also admit of an interpretation more

21  favorable to Burch, the ALJ's interpretation was rational, and we must uphold the

22  ALJ's decision where the evidence is susceptible to more than one rational

23  interpretation") (internal quotations and citation omitted); see also Archambeault

24  v. Astrue, 321 Fed. Appx. 601, 603 (9th Cir. 2009) (upholding adverse credibility

25

26      [11]In a note in the record, plaintiff explained that she lost her insurance coverage with
    Kaiser on December 15, 2007, but became eligible for medical on April 1, 2008.  (AR 153-54).

27

28      [12]While the medical record does suggest that plaintiff's bilateral knee osteoarthritis
    appears to be worsening over time, at the time of the hearing plaintiff testified that she still was
    able to walk her dog daily and walk to the grocery store twice per week.  (AR 43).

1   determination based upon claimant's ability to perform daily activities including

2   "household chores, such as grocery shopping, caring for pets. . ., cook[ing],

3   wash[ing] dishes, and perform[ing] yard work," noting "[w]e have repeatedly

4   upheld adverse credibility findings under similar circumstances").[13]

5       Second, an ALJ may discredit a plaintiff's subjective symptom testimony

6   due, in part, to the absence of supporting objective medical evidence.  <u>Burch</u>, 400

7   F.3d at 681; <u>Rollins</u>, 261 F.3d at 857 ("While subjective pain testimony cannot be

8   rejected on the sole ground that it is not fully corroborated by objective medical

9   evidence, the medical evidence is still a relevant factor in determining the severity

10  of the claimant's pain and its disabling effects.") (citation omitted).  Here, the ALJ

11  reasonably concluded that plaintiff's subjective symptom allegations were out of

12  proportion to the objective medical findings, given the absence of any evidence

13  suggesting the degree of functional limitations plaintiff asserted.  As the ALJ

14  acknowledged, the record does not include evidence of muscle wasting or

15  weakness, nor does the record include any evidence to suggest plaintiff's

16  osteoarthritis would continue to present significant limitations in plaintiff's ability

17  to stand or walk if she had the recommended surgery.

18      The foregoing reasons are clear and convincing reasons which provide a

19  sufficient basis upon which to reject plaintiff's testimony and statements.  As the

20  ALJ made specific findings stating clear and convincing reasons supported by

21  substantial evidence for disbelieving plaintiff, the ALJ's credibility determination

22  was not materially erroneous.  Accordingly, a remand or reversal on this basis is

23  not warranted.

24  ///

25  ///

26  ///

27

28

---

[13]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.  <u>See</u> U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

1   **V.      CONCLUSION**

2           For the foregoing reasons, the decision of the Commissioner of Social

3   Security is affirmed.

4           LET JUDGMENT BE ENTERED ACCORDINGLY.

5   DATED:   October 29, 2009

6                                        _____/s/_____

7                                        Honorable Jacqueline Chooljian
                                         UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28